COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Humphreys and McClanahan
Argued at Richmond, Virginia


CORNELIUS LORENZO SPENCER

                                                          OPINION BY
v.        Record No. 2344-02-2            JUDGE ROSEMARIE ANNUNZIATA
                                                        FEBRUARY 10, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Catherine C. Hammond, Judge

Christopher A. Bain (Goodwin, Sutton, & DuVal, on brief), for
appellant.

Alice T. Armstrong, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Cornelius Lorenzo Spencer appeals his conviction at a bench trial for carjacking in

violation of Code § 18.2-58.1, contending the evidence was insufficient to prove beyond a

reasonable doubt that force was used to take the car from its owner. For the reasons that follow,

we affirm Spencer's conviction.

I.  Background

Cornelius Lorenzo Spencer was tried and convicted on charges of grand larceny in

violation of Code § 18.2-95 and carjacking in violation of Code § 18.2-58.1. The trial court

sentenced him to five years imprisonment, with four years suspended, on the grand larceny

charge, and ten years imprisonment, with nine years suspended, for the carjacking offense. He

contends the evidence was insufficient to establish the carjacking conviction; the grand larceny

conviction was not challenged.

We review the evidence on appeal, together with the reasonable inferences that may be drawn, in the light most favorable to the party who prevailed below. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). So viewed, the record shows that on February 6, 2002, Teal Smith drove her car, a 1994 Toyota Camry, to the rental office of the Hilliard Apartments in Henrico County where she intended to drop off her rent check. When she arrived at approximately 12:45 a.m., Smith "pulled . . . up to the curb[,] . . . left the car running with the headlights on[,] walked over" to the rental office, and "dropped [her rental check] through the slot." She was ten feet from her car. As she returned to her vehicle, Smith "heard somebody running across the street." She turned and saw Spencer open her car door and jump into the car. He did not immediately drive away, however. Thinking that someone was "playing a joke," Smith walked up to the car and stood in front of it, touching the car for a minute or two and staring at Spencer through the windshield.

As she stood there, Spencer put the car in gear and bumped her legs with the car, causing bruising. Smith nevertheless stood her ground, recalling that she "wasn't really nervous," because she "was so in shock." However, when the car started rolling toward her again, Smith moved away, knowing that "if [she] didn't . . . she might get run over." Spencer drove away in Smith's car.

Officer Stephen Canada of the Henrico County Police Department received the report of Smith's stolen vehicle at approximately 1:13 a.m. At about 2:39 a.m., he saw a car that matched the description of Smith's car. Once he verified that the car he saw belonged to Smith, Officer Canada stopped the vehicle and arrested Spencer.

Smith identified Spencer at trial as the person who stole her car. Spencer testified and denied that he stole Smith's car, although he conceded he was driving the vehicle when Officer Canada stopped it. The trial court convicted Spencer of the offense, finding that

the facts of the case are sufficient to support the crime that's charged, because there's testimony that's basically uncontradicted that there was a seizure of the car during the time that Ms. Smith was still in possession of the car and that the person who committed that seizure intended to deprive Ms. Smith of her possession of the car, and the way that he intended to do that was by means of forcing her away with the threatening conduct of driving towards her.

Spencer was sentenced to ten years imprisonment, nine years suspended, for the carjacking offense. This appeal ensued.

## II. Analysis

### A. Standard of Review

When considering sufficiency claims on appeal, this Court "review[s] the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). Applying this standard of review, the Court looks "to that evidence which tends to support the verdict and to permit the verdict to stand unless plainly wrong." Snyder v. Commonwealth, 202 Va. 1009, 1016, 121 S.E.2d 452, 457 (1961). "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Martin, 4 Va. App. at 443, 358 S.E.2d at 418. Moreover, "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

### B. Smith Still Had Possession of Her Car when Spencer Resorted to Violence

Code § 18.2-58.1 defines the elements of the instant offense as follows:

> "[C]arjacking" means the intentional seizure or seizure of control of a motor vehicle of another with intent to permanently or temporarily deprive another in possession or control of the vehicle

- 3 -

of that possession or control by means of partial strangulation, or suffocation, or by striking or beating, or by other violence to the person, or by assault or otherwise putting a person in fear of serious bodily harm, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever.

"[C]arjacking is a species of robbery." Sanchez v. Commonwealth, 32 Va. App. 238, 241, 527 S.E.2d 461, 463 (2000). Therefore, "the requisite violence or intimidation must precede or be concomitant with the taking." Bell v. Commonwealth, 21 Va. App. 693, 701, 467 S.E.2d 289, 293 (1996). "Robbery, a common law offense in Virginia, is defined as the 'taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, *by violence or intimidation*.'" Jones v. Commonwealth, 26 Va. App. 736, 738, 496 S.E.2d 668, 669 (1998) (quoting Harris v. Commonwealth, 3 Va. App. 519, 521, 351 S.E.2d 356, 357 (1986)); see Mason v. Commonwealth, 200 Va. 253, 254, 105 S.E.2d 149, 150 (1958); Graves v. Commonwealth, 21 Va. App. 161, 164, 462 S.E.2d 902, 903 (1995).

"The essential elements of common law robbery are (1) a felonious taking, (2) accompanied by an asportation of (3) personal property of value (4) from the person of another or in his presence, (5) against his will, (6) by violence or by putting him in fear, (7) *animo furandi* (with the intent to steal)." Chappelle v. Commonwealth, 28 Va. App. 272, 274-75, 504 S.E.2d 378, 379 (1998).

> "The actual taking and asportation of some of the victim's personal property is an essential element of robbery. In other words, there must first be a larceny -- felonious taking. Supplementing the taking, as in larceny, there must be an asportation or carrying away of the goods. Severance of the goods from the owner and absolute control of the property by the taker, even for an instant, constitutes an asportation."

Mason, 200 Va. at 256, 105 S.E.2d at 151 (quoting 46 Am. Jur. Robbery § 6).

"Violence or force requires a physical touching or violation of the victim's person. The touching or violation necessary to prove the offense may be indirect, but cannot result merely

from the force associated with the taking." Bivens v. Commonwealth, 19 Va. App. 750, 752, 454 S.E.2d 741, 743 (1995). The force or intimidation that must be proved to sustain a conviction for robbery must be directed at the person of the victim. Winn v. Commonwealth, 21 Va. App. 179, 182, 462 S.E.2d 911, 912 (1995).

Relying on Bell, Spencer reasons that his larceny of Smith's car was complete when he "entered the vehicle, closed the door and sat in the driver's seat" because he had "gained possession and complete control of the vehicle." We find that his contention is without merit and that his reliance on Bell is misplaced. The issue before the Court in Bell was whether the evidence was sufficient to sustain a charge of carjacking where the defendant took the keys to the victim's car but the car was not in the victim's presence. Bell, 21 Va. App. at 698, 467 S.E.2d at 291. In Bell, the victim parked her car and walked around the corner to her home. Id. at 696, 467 S.E.2d at 291. Bell followed the victim to her doorstep, demanded her car keys, took the keys, and ran to her car. Id. at 696-97, 467 S.E.2d at 291. This Court held that, when he took the victim's keys, Bell deprived her of possession of the car because she no longer had the means to exercise control of it. Id. at 699, 467 S.E.2d at 292. We, therefore, upheld Bell's conviction for carjacking. Id.

Analogizing to Bell and the import of the holding that the victim was found to have dominion and control over her vehicle at the time Bell took possession of the car keys, Spencer argues that, once he was inside Smith's car and had her vehicle's keys, which she had left in the ignition, he had possession of Smith's car. At that point, Spencer argues, the larceny was completed before any violence was exerted. Spencer misapprehends the distinguishing features of Bell. In Bell, the victim made no attempt to exercise dominion and control over the keys or the car which they controlled once the defendant obtained possession of them; rather, she was forced to relinquish her possessory interest in the keys and, by extension the car, by violence and

intimidation.  Id.  Under those facts, we affirmed Bell's conviction of carjacking because the taking and asportation of the keys as a result of the defendant's intimidation, in effect, gave the defendant absolute control over the vehicle.  Bell does not support the proposition, however, that possession of the car keys is alone determinative of the issue.  See, e.g., Brown v. Commonwealth, 37 Va. App. 507, 521, 559 S.E.2d 415, 422 (2002) (noting that determining "possession and control [of a vehicle] . . . solely by the physical possession of the car keys" has "no support in the statute or case law").

In the instant case, Smith did not relinquish her car to Spencer by leaving her keys in the vehicle.  Nor did she relinquish her keys to him upon a showing of force, as did the victim in Bell.  When she left her keys in the ignition, she remained in constructive possession and control of the vehicle, and she exercised that superior claim, challenging Spencer's attempt to divest her of it.  She did so by standing in front of her car, blocking its passage, until Spencer bumped her with the car and forced her out of his path.  See Commonwealth v. Jones, ___ Va. ___, ___, ___ S.E.2d ___, ___, 2004 Va. LEXIS 25, *8 (Jan. 16, 2004) (upholding robbery conviction where defendant "originally intended to commit larceny" in stealing boots from a store but committed robbery when, in the store parking lot, he "produced [a] firearm to overcome the manager's opposition to the taking").

"'In a robbery prosecution, where the violence against the victim and the trespass to his property combine in a continuing, unbroken sequence of events, the robbery itself continues as well for the same period of time.'"  Quisenberry v. Commonwealth, 241 Va. 364, 373, 402 S.E.2d 218, 224 (1991) (quoting Briley v. Commonwealth, 221 Va. 532, 543, 273 S.E.2d 48, 55 (1980)).

Applying these principles, we find that Smith retained possession of the vehicle when Spencer entered it in her presence and that, in an "unbroken sequence of events," she was forced

by Spencer, through violence and intimidation, to relinquish possession of the property. The taking and asportation of Smith's vehicle was accomplished only when Spencer intimidated and forced her to move from the path of the vehicle as he attempted to take the car. At that juncture, and only then, did Spencer establish his "absolute control of the property," Mason, 200 Va. at 256, 105 S.E.2d at 151, and thereby sever Smith's control.

We also find that this Court's decision in Broady v. Commonwealth, 16 Va. App. 281, 429 S.E.2d 468 (1993), is apposite on its facts. In Broady, the defendant and a companion followed the victim, Mrs. Lee, into her motel room and took the victim's purse. Id. at 283, 429 S.E.2d at 470. After the defendant took possession of the purse, he fled with Mrs. Lee in pursuit. Id. The defendant threw the purse to his accomplice who then threw it back to the defendant who "fumbled" it. Id. The purse dropped to the ground, evidencing the defendant's absence of absolute control over the property. See Mason, 200 Va. at 256, 105 S.E.2d at 151. The Court held that the victim had constructive possession of the purse as it lay on the ground and that the force then used by the defendant to take it from her constituted robbery. Broady, 16 Va. App. at 289, 429 S.E.2d at 473. Similarly, the victim here maintained constructive possession because she resisted the taking and remained in close proximity to the car. The force used in order to complete the asportation was sufficient to sustain the charge of carjacking.

Finally, we note that Spencer's reliance on Mason is misplaced. In Mason, the evidence showed that the thief had completed the taking and asportation before the use of violence. Before the owner of the property confronted the defendant and violence occurred, the defendant transported the property to an accomplice who absconded with it; absolute control over the property in the defendant was therefore established before force or intimidation was exerted. Mason, 200 Va. at 256-67, 105 S.E.2d at 151-52; see also Jones, ___ Va. at ___, ___ S.E.2d at ___, 2004 Va. LEXIS 25, *6-7 (distinguishing Mason on the ground that the asportation was

- 7 -

complete when force was exerted). Here, the taking and asportation of Smith's car was not complete until after Spencer bumped her out of his path, and Smith did not relinquish possession and control of the vehicle until that juncture.[1] See Beard v. Commonwealth, 19 Va. App. 359, 363, 451 S.E.2d 698, 700 (1994) ("Where violence or intimidation is part of a continuous transaction collateral to the . . . asportation, the point in time . . . in which the asportation has removed the property from the victim's absolute control so that the continued removal of the property constitutes an escape rather than a taking defies a bright line test.").

In short, the trial court here concluded that Smith was still in possession of her car when Spencer exerted force to take it from her possession and control, and the evidence fully supports this conclusion. See Martin, 4 Va. App. at 443, 358 S.E.2d at 418.

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

---

[1] The Commonwealth does not argue that, by analogy to the crime of robbery, the evidence was sufficient to sustain the conviction because Smith's car was taken "from her presence." See, e.g., Person v. Commonwealth, 10 Va. App. 36, 40, 389 S.E.2d 907, 910 (1990) (finding that, "because the five dollar bill was in [the victim's] presence at the inception of the robbery, this was sufficient to prove that it was taken from her presence"). Accordingly, we will not address the issue.