PRESENT: All the Justices

TAVON HILTON

v. Record No. 160458

COMMONWEALTH OF VIRGINIA

OPINION BY
ELIZABETH A. McCLANAHAN
April 13, 2017

FROM THE COURT OF APPEALS OF VIRGINIA

A jury convicted Tavon Hilton of carjacking and use of a firearm in the commission of carjacking, along with robbery, attempted robbery, attempted malicious wounding and three other counts of using a firearm in the commission of these felonies. On appeal, Hilton contends the trial court erred in denying his motion to strike the Commonwealth's evidence as insufficient to sustain the carjacking and related firearm convictions. He also contends the trial court erred in refusing his proffered jury instruction on carjacking. Finding no error, we affirm Hilton's convictions.

I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Scott v. Commonwealth*, 292 Va. 380, 381, 789 S.E.2d 608 (2016) (citing *Baldwin v. Commonwealth*, 274 Va. 276, 278, 645 S.E.2d 433, 433 (2007)). The two victims in this case were Ronald Wetzler and his son, Rodney Wetzler, both of whom testified at trial. Seeking to purchase a used vehicle, Rodney discovered a Craigslist advertisement offering to sell a 2002 Cadillac Seville and called the purported owner, who went by the name of "James,"—later identified by the police as Hilton. Rodney agreed to meet Hilton at the leasing office of an apartment complex to look at the car. Later that afternoon, Ronald drove his son, Rodney, to the leasing office in

Ronald's pickup truck. When they found no one at that location, Rodney called Hilton, at which time Hilton directed them to drive to the back of the apartment complex where he would meet them. Ronald then drove to that location, parked his truck and exited it, along with Rodney.

There, they encountered two individuals, Hilton, who introduced himself as James, and another male, who remained unidentified. The advertised car was nowhere to be seen. Hilton said he had sent someone with the car to put gas in it. As the four men chatted at the rear of Ronald's truck, Hilton pulled out a revolver-type handgun, pointed it at Ronald's chest and stated, "don't make me shoot you." Hilton's accomplice proceeded to go through Ronald's and Rodney's pockets. The accomplice took Ronald's truck keys and wallet, but returned the wallet after finding no money in it. He also took cash from Rodney totaling $2,773. After taking the cash and truck keys, Hilton ordered both Ronald and Rodney to get into the truck. When they complied, Hilton and his accomplice started walking away.

A few moments later, Ronald exited his truck with a shotgun, yelled at Hilton and his accomplice to drop the truck keys, and then fired a shot in the air. The assailants ran, after which Rodney grabbed the shotgun from Ronald and chased after them. Rodney ended his pursuit when Hilton fired four shots in Rodney's direction. Hilton and his accomplice then fled from the area.

After the Commonwealth presented its case in chief on the various charges against Hilton at his jury trial, Hilton moved to strike the Commonwealth's evidence on the charges brought against him for carjacking in violation of Code § 18.2-58.1, and use of a firearm in the commission of carjacking in violation of Code § 18.2-53.1. Hilton argued that the evidence was insufficient because it showed only that he took possession of Ronald's truck keys, and not that he actually took possession or control of the truck, as required under Code § 18.2-58.1. The trial

2

court denied the motion to strike. Hilton then renewed the motion to strike at the close of all the evidence based on the same argument, and the trial court again denied the motion.

With respect to the carjacking related charges, Hilton proffered a jury instruction specifically addressed to the jury's consideration of the act of taking the truck keys. The Commonwealth objected to the instruction, arguing that it imposed upon the Commonwealth a higher burden than the law required. The trial court sustained the Commonwealth's objection, concluding that the Virginia model jury instruction tendered by the Commonwealth for carjacking was sufficient.

The jury found Hilton guilty on all charges and the trial court entered judgments of conviction imposing the jury's verdicts, including the sentences of imprisonment fixed by the jury.

Hilton appealed his convictions of carjacking and use of a firearm in the commission of carjacking to the Court of Appeals, arguing that the trial court erred by (i) denying his motion to strike the Commonwealth's evidence supporting the charges for those offenses on sufficiency grounds, and (ii) rejecting his proffered carjacking related jury instruction. Hilton's petition for appeal was denied by the Court of Appeals in a per curiam order (*Hilton v. Commonwealth*, Record No. 0552-15-2 (December 30, 2015)) and again denied by order of a three-judge panel of the Court of Appeals (*Hilton v. Commonwealth*, Record No. 0552-15-2 (March 15, 2016)). We subsequently awarded Hilton this appeal.

## II. ANALYSIS

### A. Sufficiency of the Evidence

When the sufficiency of the evidence is challenged on appeal in a criminal case, "we review factfinding with the highest degree of appellate deference." *Bowman v. Commonwealth*,

3

290 Va. 492, 496, 777 S.E.2d 851, 854 (2015). In such cases, as we have repeatedly stated, "[a]n appellate court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* (quoting *Williams v. Commonwealth*, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is," upon review of the evidence in the light most favorable to the prosecution, "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citation omitted); *see Commonwealth v. Lambert*, 292 Va. 748, 757, 793 S.E.2d 805, 809 (2016) (same); *Vasquez v. Commonwealth*, 291 Va. 232, 248, 781 S.E.2d 920, 929 (2016) (same).

Based on this standard of review, we hold that there was more than sufficient evidence for a rational factfinder to conclude that Hilton was guilty of the crime of carjacking and the related crime of using a firearm in the commission of carjacking.

Code § 18.2-58.1 defines carjacking, in relevant part, as "the intentional seizure or seizure of control of a motor vehicle of another with intent to permanently or temporarily deprive another in possession or control of the vehicle of that possession or control by [among other listed violent or threatening acts] the threat or presenting of firearms . . . ." Thus, to establish the crime of carjacking, the Commonwealth must prove beyond a reasonable doubt that (i) the victim was in possession or control of a motor vehicle; (ii) the perpetrator intentionally seized, or seized control of, the vehicle, either temporarily or permanently; and (iii) the perpetrator so deprived the victim of possession or control of the vehicle by means of one or more of the specifically prohibited acts—which includes the use of a firearm.

This means that under the explicit terms of Code § 18.2-58.1 a perpetrator can commit carjacking without actually seizing the victim's vehicle, i.e., taking possession of it, *see* Black's

4

Law Dictionary 1564 (10th ed. 2014) (defining "seize" as "[t]o forcibly take possession (of a person or property)"), as occurs, for example, where the perpetrator actually enters the victim's vehicle and drives away. *See Pressley v. Commonwealth*, 54 Va. App. 380, 387-88, 679 S.E.2d 551, 555 (2009) (carjacker seized pizza deliveryman's car by taking car keys from him through intimidation and absconding with his car). Short of seizure, a perpetrator can violate the statute by only seizing *control* of the victim's vehicle, i.e., "exercis[ing] power" over it, Black's Law Dictionary at 403 (defining the word "control"), meaning the victim can be deprived of possession or control of his vehicle without the perpetrator actually entering the vehicle. [1] *See People v. Gray*, 78 Cal. Rptr. 2d 191, 196 (Cal. Ct. App. 1998) (upholding carjacking conviction where defendant "exercise[d] dominion and control over [victim's] car by force and fear" without entering the car).

As this involves an issue of statutory interpretation of Code § 18.2-58.1, it presents a question of law subject to de novo review. *Grimes v. Commonwealth*, 288 Va. 314, 318, 764 S.E.2d 262, 264 (2014) (citing *Washington v. Commonwealth*, 272 Va. 449, 455, 634 S.E.2d 310, 313 (2006)). "Although penal statutes are to be strictly construed against the Commonwealth," we give the term at issue here, "control," its "ordinary and plain meaning, considering the context in which it is used." *Id*. In doing so, we are also mindful that "[a] defendant is not entitled to a favorable result based upon an unreasonably restrictive interpretation of [a] statute." *Id*. (internal citations and quotation marks omitted).

---

[1] The jury in this case was not instructed on "seizure" as an element of carjacking under Code § 18.2-58.1, but was instructed instead on the element of "seizure of control." For this reason, we decline the Commonwealth's invitation to consider deciding this appeal on the alternative grounds of constructive possession.

In challenging the trial court's denial of his motion to strike the evidence of the carjacking related charges on sufficiency grounds, Hilton shares the Commonwealth's view, and we agree, that for purposes of Code § 18.2-58.1 the evidence established that Ronald was in "possession or control" of his truck while standing beside it with his truck keys in his pocket and conversing with Hilton.[2] From there, however, Hilton's assessment of the evidence is flawed. He asserts the evidence shows that, throughout Ronald's encounter with Hilton, Ronald was "never out of possession or control of [his] vehicle." Appellant's Br. at 10. Hilton bases this assertion on the fact that Ronald remained in close proximity to the truck after Hilton took the truck keys from him[3], Hilton never entered the vehicle, and Ronald was "able to defend the vehicle with a shotgun" as Hilton and his accomplice walked away. *Id*. at 10-12. "At best," Hilton argues, "the evidence would suggest that control of the vehicle was shared" when he took the truck keys from Ronald. *Id*. at 10. Thus, the Commonwealth must ultimately rely "simply and solely on the taking of the victim's keys" as support for his carjacking related convictions, according to Hilton, which he asserts is insufficient to sustain the convictions. *Id*. at 13.

---

[2] *See Bell v. Commonwealth,* 21 Va. App. 693, 696-99, 467 S.E.2d 289, 291-92 (1996) (holding victim was in "possession or control" of her car parked within eyesight on the street when carjacker took car keys from her while on her front porch); *see also Reeves v. State*, 994 A.2d 469, 484 (Md. Ct. Spec. App. 2010) ("[T]he victim need not actually be seated in, or operating the vehicle in order for a carjacking . . . to be consummated. Rather, the victim need only be entering, alighting from, or otherwise in the immediate vicinity of the vehicle when an individual obtains unauthorized possession or control of the vehicle by intimidation, force, or violence, or by threat of force or violence." (quoting *Mobley v. State*, 681 A.2d 1186, 1190 (Md. Ct. Spec. App. 1996)).

[3] There is no dispute that Hilton is deemed to have taken Ronald's truck keys, even though Hilton's accomplice is the one who physically took the keys from Ronald's pocket while Hilton pointed a gun at Ronald. *See Vasquez*, 291 Va. at 249, 781 S.E.2d at 930 ("[T]he law is well settled in Virginia that each co-actor is responsible for the act of the others." (quoting *Thomas v. Commonwealth*, 279 Va. 131, 159, 688 S.E.2d 220, 236 (2010)); *Carter v. Commonwealth*, 232 Va. 122, 126, 348 S.E.2d 265, 267 (1986) (same).

6

With these assertions, Hilton confuses and otherwise ignores certain of the salient facts that support his carjacking related convictions. Hilton did not "simply and solely" take the truck keys from Ronald, the carjacking victim. Hilton took the keys from this victim by means of pulling out a revolver, pointing it at the victim's chest at point-blank range, and threatening to shoot the victim as he and his son were being robbed—all while Hilton and the victim were standing next to the victim's truck. At that point, the victim was not free to get back into his truck, much less drive it. Hilton and/or his accomplice were the only ones who could have quickly entered the truck and absconded with it. Those circumstances cannot be viewed in any reasonable way as amounting to "shared" control of the truck between Hilton and the victim, as Hilton contends. Furthermore, it was only after the victim was back in his truck at Hilton's command and Hilton was fleeing the scene—while, in fact, still in possession of the truck keys—that the victim had access to his shotgun. By that time, the victim's control of the vehicle had already been lost to Hilton and the crime of carjacking had been committed.

On these facts, a rational factfinder could easily conclude that, at least, between the time Hilton took the truck keys from the victim at gunpoint and the time the victim was forced back into his truck, however brief that period of time may have been, Hilton intentionally and temporarily seized control of the victim's truck through the use of a firearm and thereby deprived the victim of possession or control of the truck, in violation of Code § 18.2-58.1. Thus, the trial court did not err in denying Hilton's motion to strike the evidence supporting his carjacking charge and related firearm charge because the evidence was sufficient for the jury to find him guilty of these offenses.

B. Proffered Jury Instruction

Hilton next challenges the trial court's rejection of his proffered jury instruction specifically addressing the jury's consideration of the act of taking the truck keys. The instruction stated:

> You may not find from the taking of the keys alone that the defendant is guilty of carjacking. However, you may consider the taking of the keys to a vehicle as evidence of an intent to exercise dominion and control over a vehicle. This does not relieve the Commonwealth of its duty to establish each and every element of the offense of carjacking beyond a reasonable doubt.

Whether to give or deny jury instructions "rest[s] in the sound discretion of the trial court." *Cooper v. Commonwealth*, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009) (citing *Daniels v. Commonwealth*, 275 Va. 460, 466, 657 S.E.2d 84, 87 (2008) and *Stockton v. Commonwealth*, 227 Va. 124, 145, 314 S.E.2d 371, 384 (1984)). Our responsibility in reviewing jury instructions is "to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Payne v. Commonwealth*, 292 Va. 855, 869, 794 S.E.2d 577, 584 (2016) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 228, 738 S.E.2d 847, 870 (2013)). At the same time, this Court "has repeatedly held that an instruction is improper which singles out one portion of the evidence for special emphasis." *LeVasseur v. Commonwealth*, 225 Va. 564, 595, 304 S.E.2d 644, 661 (1983) (citing *Snyder v. Commonwealth*, 220 Va. 792, 797, 263 S.E.2d 55, 58 (1980) and *Woods v. Commonwealth*, 171 Va. 543, 547-48, 199 S.E. 465, 467 (1938)). "When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." *Daniels*, 275 Va. at 466, 657 S.E.2d at 87 (quoting *Stockton v. Commonwealth*, 227 Va. 124, 145, 314 S.E.2d 371, 384 (1984)).

8

In rejecting Hilton's proffered instruction, the trial court decided that the Virginia model jury instruction on carjacking "sufficiently apprise[s] the jury what they have to find. I think the lawyers can argue the facts as they apply to those instructions." Notably, the court likewise rejected the Commonwealth's proffered instruction that also focused on the act of taking the keys, which stated that "[t]aking the keys to a car is exercising dominion and control over the vehicle."

The carjacking instruction given by the trial court, which was taken from the Virginia Model Jury Instructions (*see* 2 Virginia Model Jury Instructions – Criminal, No. G47.200 (2015)) and drew no objection from either side, tracks the elements of carjacking under Code § 18.2-58.1 nearly verbatim. In doing so, it "fully and fairly cover[s]" the elements of this offense.[4] *Daniels*, 275 Va. at 466, 657 S.E.2d at 87. The jury was thus armed with a proper carjacking instruction when it considered the Commonwealth's evidence offered to prove the critical element that Hilton seized control of the victim's truck. It was then within the fact-finding province of the jury to determine how Hilton's act of taking the truck keys from the

---

[4] The carjacking instruction given by the trial court states in pertinent part:

The defendant is charged with the crime of carjacking of Ronald Wetzler. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:

That the defendant seized control of a motor vehicle of another;

And that the defendant acted with intent to permanently or temporarily deprive another in possession or control of that vehicle, of that possession, or control by means of assault, violence of the person, or by threat or presenting a firearm.

If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the crime as charged, then you shall find the defendant guilty . . . .

9

victim by force factored into whether he exerted such control.  Accordingly, the trial court did not abuse its discretion in denying Hilton's proffered instruction.

## III.  CONCLUSION

For these reasons, we affirm Hilton's convictions for carjacking and use of a firearm in the commission of carjacking.

*Affirmed*.